IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MICHAEL E. PENN, as Special )
Administrator of the Estate of )
THERESA A. PENN, deceased, and )
MICHAEL E. PENN, Individually and )
as Representative Heir-at-Law of )
THERESA A. PENN, deceased, )
                                               )
                     Plaintiff, )    **CIVIL ACTION**
                                               )
v. )    No. 11-1243-MLB
                                               )
SALINA REGIONAL HEALTH )
CENTER, INC., and )
CURTIS D. KAUER, M.D., )
                                               )
                   Defendants. )

**MEMORANDUM AND ORDER**

EMTALA was enacted to prevent "patient dumping" by hospitals which refuse to provide emergency medical treatment or which transfer a patient before the patient's condition is stabilized. Salina Regional Health Center (Salina Regional) refused to admit Theresa Penn to its emergency room when she was suffering from a life-threatening emergency and she later died. However, because Penn did not "come to" Salina Regional, nor was she in a Salina Regional ambulance, nor was she transferred to Salina Regional from another hospital, EMTALA does not apply. Salina Regional's Motion to Dismiss (Doc. 6) is granted.

I. Facts

Ottawa County has a small hospital, Ottawa County Health Center, owned and operated by Ottawa County in Minneapolis, Kansas. Ottawa County Health Center is designated a Medicare "critical access hospital." COMCARE operates a number of clinics throughout Kansas, including a COMCARE clinic located in Minneapolis, Kansas. The

COMCARE clinic facility is co-owned by Ottawa County Health Center and the local Health Planning Commission and is leased by COMCARE. The physicians at COMCARE are employed by COMCARE, and many of the physicians have employment agreements with Ottawa County Health Center to provide emergency services at the hospital.

Typically, during normal working hours, if a patient presents to Ottawa County Health Center for an emergency, a physician from the COMCARE clinic responds to the hospital to treat the patient. Therefore, many patients present directly to COMCARE for emergency services during normal hours.

On January 14, 2011 Theresa Penn ("Penn") presented to the COMCARE clinic in Minneapolis, Kansas after she began to experience pressure and aching in her upper chest which radiated into her neck, as well as constant pain in both arms and her jaw. Penn's primary care physician, Dr. Yoxall, had an office at the COMCARE clinic. Dr. Yoxall examined Penn and concluded that Penn's symptoms were consistent with acute coronary syndrome and acute myocardial infarction and that Penn was in a life-threatening emergency. Dr. Yoxall called Salina Regional because Salina Regional was the closest hospital with an emergency room and specialized facilities. Salina Regional is a "supporting hospital" for Ottawa County Health Center but plaintiff does not allege that there is any ownership or legal relationship of any kind between Salina Regional and Ottawa County Health Center and/or COMCARE. Most important, plaintiff does not allege that the term "supporting hospital" has any legal significance under EMTALA.

Dr. Kauer, the on-call cardiologist at Salina Regional, refused

to receive Penn, stating there were no available beds in the intensive care unit.

Therefore, Penn was taken by ambulance to Via Christi Regional Medical Center - St. Francis Campus in Wichita. Plaintiff does not allege that the ambulance service is owned by or in any way affiliated with Salina Regional. Penn coded during the transport and she was unstable during the remaining ambulance ride. Attempts to save her life were unsuccessful and Penn died in Wichita on January 15, 2011.

II. Standard

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). Furthermore, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). Documents attached to the complaint are considered as part of the pleadings. Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th cir. 2006).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must look for "plausibility in the complaint." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell

Atlantic Corp., 550 U.S. at 570. The possibility that plaintiff could prove some facts in support of the pleaded claims is insufficient; the court must believe the plaintiff has a reasonable likelihood of showing factual support for the claims. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The plaintiff must "nudge his claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp. at 1974.

III. Discussion

a. Did Penn "come to" Salina Regional?

Under EMTALA, for hospitals such as Salina Regional with an emergency department, "if any individual... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). Additional guidance is provided in 42 C.F.R. § 489.24:

> "Comes to the emergency department means, with respect to an individual who is not a patient (as defined in this section), the individual -
> (1) Has presented at a hospital's dedicated emergency department, as defined in this section, and requests examination or treatment for a medical condition, or has such a request made on his or her behalf.
> (2) Has presented on hospital property, as defined in this section, other than the dedicated emergency department, and requests examination or treatment for what may be an emergency medical condition, or has such a request made on his or her behalf.
> (3) Is in a ground or air ambulance owned and operated by the hospital for purposes of examination and treatment for a medical condition at a hospital's dedicated emergency department, even if the ambulance is not on hospital grounds.
>
> Hospital property means the entire main hospital campus as defined in § 413.65(b) of this chapter, including the parking lot, sidewalk, and driveway, but excluding other

-4-

>areas or structures of the hospital's main building that are not part of the hospital, such as physician offices, rural health centers, skilled nursing facilities, or other entities that participate separately under Medicare, or restaurants, shops or other nonmedical facilities.

Salina Regional points out that Penn never "came to" its emergency department and asks the court to follow the lead of the Third Circuit in <u>Torretti v. Main Line Hospitals, Inc.</u>, 580 F.3d 168 (3rd Cir. 2009). <u>Torretti</u> found that EMTALA did not apply but factually, the case turned on whether Mrs. Torretti presented in an emergent condition, which both the district court and the Third Circuit concluded she did not. Obviously, that was not the situation here. Had Penn walked into Salina Regional's emergency room, or had been transported in a Salina Regional ambulance, there would be no question about EMTALA's application.

Plaintiff, faced with the facts that Penn was not transported in a Salina Regional ambulance and that she was never on Salina Regional property, gamely responds that courts have taken a broad interpretation of the requirement that a patient "comes to" an emergency department and argues that the requirement was met when Penn was in Dr. Yoxall's office when he called Salina Regional.

Plaintiff initially relies on <u>Arrington v. Wong</u>, 237 F.3d 1066 (9th Cir. 2011). In <u>Arrington</u>, the question was whether plaintiff satisfied the "comes to" language when the deceased was in a non-hospital owned ambulance and the hospital re-routed the deceased to another hospital that was further away. The court looked at the interpretation by the Department of Health and Human Services of the term "comes to the emergency department" and found that HHS "interprets that statutory phrase broadly, to include not just the

-5-

emergency room itself, but all hospital property - sidewalks, outlying facilities, and ambulances - so that once a patient seeking medical treatment presents himself at any facility or vehicle owned or operated by the hospital, he has 'come to' the emergency department." The court ruled that once an ambulance is enroute to the hospital, the hospital may not prevent it from coming unless it "is in 'diversionary status.'"

Plaintiff also cites <u>Morales v. Sociedad Espanola de Auxilio Mutuo y Beneficencia</u>, 524 F.3d 54 (1st Cir. 2008) which, in turn, relies on <u>Arrington</u>. In <u>Morales</u>, the patient was in a non-hospital owned ambulance on the way to the hospital. The hospital "signaled" to the paramedics to take Mrs. Morales somewhere else after learning of her uninsured status, which they did. Plaintiff filed suit claiming a violation of EMTALA. Citing <u>Arrington</u>, the court ruled that the patient had "come to" the hospital's emergency department, a request for examination had been made, and the request had been rebuffed because of her uninsured status.

Both <u>Arrington</u> and <u>Morales</u> engage in extended discussions of the purposes of EMTALA and, in particular, 42 C.F.R. 489.24 which interprets the "comes to" language of § 1395 dd(a). The majority opinions in both cases seem to conclude that when a person is in an ambulance on the way to a hospital, presumably in an emergent condition, the "comes to" requirement is met, even if the person never enters the hospital[1] and even if the ambulance is not owned by the

---

[1] The opinion in <u>Arrington</u> does not mention whether the deceased was, or was not, insured. Mrs. Morales, on the other hand, was indigent, a fact which was made known to the hospital and was noted by the majority. Refusal to treat an indigent patient in an emergent

-6-

hospital – in other words, interpretations diametrically opposed to the definitions in 42 C.F.R. 489.24.

Interestingly enough, both Arrington and Morales have dissents which discuss concepts of statutory and regulatory interpretation and cite case law. The bottom line of each dissent is simple: "comes to" requires that the patient be physically present on hospital property. If either Arrington or Morales were Tenth Circuit cases, the court would be bound to follow them. But the court declines to do so because it considers the majority opinions to be strained attempts to make EMTALA apply to tragic factual scenarios.

Plaintiff argues that the doctrine of equitable estoppel precludes Salina Regional from arguing that Penn did not "come to" the emergency department. Plaintiff asserts that since Dr. Kauer, an agent of the hospital, told Dr. Yoxall not to have Penn come to the hospital, then Salina Regional cannot argue that Penn never "came to" the hospital. Salina Regional responds that there were no actions or statements on its part that are inconsistent with its current positions.

Equitable estoppel "prevent[s] a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." Spaulding v. United Transp. Union, 279 F.3d 901, 909 (10th Cir. 2002)(quotation omitted; brackets in original). The elements of equitable estoppel are:

> (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the

---

condition is a slam-dunk EMTALA violation. In this case, there in nothing in the complaint regarding Penn's insured status either way.

-7-

>estoppel has the right to believe that it was so intended;
>(3) the party asserting the estoppel must be ignorant of
>the true facts; and (4) the party asserting the estoppel
>must rely on the other party's conduct to his injury. Id.

"[m]ere reliance is not enough - such reliance on an adversary's misrepresentations must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."

In <u>Tucker v. Hugoton Energy Corp.</u>, 253 Kan. 373, 855 P.2d 929 (1993), the court stated:

>"A party seeking to invoke equitable estoppel must show
>that the acts...induced the first party to believe certain
>facts existed. There must also be a showing the first
>party rightfully relied and acted upon such belief and
>would not be prejudiced if the other party were permitted
>to deny the existence of such facts."

Typically, courts have applied equitable estoppel when a party changes its position after litigation has already started to a position that is inconsistent with an earlier position. See <u>Spaulding</u>, 279 F.3d 901; <u>JP Morgan Trust Co. Nat. Ass'n v. Mid-America Pipeline Co.</u>, 413 F.Supp.2d 1244, 1275 (D.Kan 2006). However, the complaint, the answer, and the briefs show that Salina Regional is not taking a position now that is inconsistent with the position taken when Dr. Yoxall called the hospital. Neither Penn nor Dr. Yoxall was misled by Dr. Kauer's refusal to receive Penn. The doctrine of equitable estoppel is not applicable in this case.

b. <u>Did Salina Regional "reverse dump" Penn?</u>

Plaintiff, in tacit recognition that <u>Arrington</u>, <u>Morales</u> and equitable estoppel do not provide strong support for his case, makes an alternative EMTALA "reverse dumping" claim, as follows:

>There are several different scenarios under which Mr.

-8-

>Penn's cause of action for "reverse dumping" under 42 U.S.C. § 1395dd(g) should survive a Rule 12(b)(6) motion, addressed in further detail below, including: (1) the facts alleged reasonably support a finding that Dr. Yoxall's facility, COMCARE, is an actual and/or expressly or impliedly held-out and/or de facto "dedicated emergency department" of Ottawa County Health Center, pursuant to 42 C.F.R. 489.24; (2) relevant case-law, statutory intent, and public policy reflect that a hospital-to-hospital transfer is not required under EMTALA's "reverse dumping" provision; and (3) to rigidly interpret the "reverse dumping" provision of EMTALA to require a hospital-to-hospital transfer would render that portion of the statute unconstitutional as impermissibly impinging on the fundamental right to interstate travel.

Salina Regional asserts that EMTALA and its regulations do not apply when a clinic or physician's office attempts to send a patient to a hospital. It argues that for a hospital to be liable under EMTALA based on "reverse dumping," the request for transfer must come from a hospital, not a clinic or a physician.

"Reverse dumping" occurs when a hospital emergency room refuses to accept an appropriate transfer from another hospital of a patient requiring its specialized capabilities. St. Anthony Hospital v. U.S. Dept. of H.H.S., 309 F.3d 680, 686 (10th Cir. 2002). The "reverse dumping" statute is 42 U.S.C. § 1395 dd(g):

>Nondiscrimination. A participating hospital that has specialized capabilities or facilities (such as burn units, shock-trauma units, neonatal intensive care units, or (with respect to rural areas) regional referral centers as identified by the Secretary in regulation) shall not refuse to accept an appropriate transfer of an individual who requires such specialized capabilities or facilities if the hospital has the capacity to treat the individual.

However, there are additional definitions in § 1395dd:

>(c)(2) An appropriate transfer to a medical facility is a transfer-
>
>(A) in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health . . .

-9-

> \* \* \*
>
> (e)(2) The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.
>
> \* \* \*
>
> (4) The term "transfer" means the movement . . . of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with ) the hospital.

The court accepts as true plaintiff's allegations that Salina Regional is a "participating hospital" and a "regional referral center." Having said that, it is apparent that "reverse dumping" requires <u>two</u> hospitals: a "transferring hospital" and a specialized transferee hospital. The court has considered the mind-numbing definition of "hospital" set out in § 1395x(e) but cannot find that COMCARE or Dr. Yoxall's office is a "hospital," much less a "transferring hospital." Finally, the court rejects plaintiff's argument that COMCARE or Dr. Yoxall's office constitute implied or de facto "dedicated emergency" departments of Ottawa County Health Center.[2] There is no room in the definition–heavy environment of

---

[2] 42 C.F.R. § 489.24 defines "dedicated emergency department" as follows:

*Dedicated emergency department* means any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus, that meets at least one of the following requirements:
   (1) It is licensed by the State in which it is located under applicable State law as an emergency room or emergency department;
   (2) It is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or
   (3) During the calendar year immediately preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient

EMTALA law and regulations for "implied" or "de facto" constructions.

Turning to plaintiff's second "reverse dumping" argument, plaintiff relies on In the Matter of Baby K, 16 F.3d 590 (4th Cir. 1994). In Baby K, a child was born with anencephaly and was moved to a nursing home. Every time Baby K went into respiratory distress, she was transferred back to the hospital where she was born. The hospital did not refuse to re-admit Baby K but instead sought a declaratory judgment that it was responsible for providing only supportive care in the form of nutrition, hydration and warmth, not respiratory support or any other aggressive treatment. The district court rejected the hospital's "limited care" argument and the Third Circuit affirmed. It is apparent that the court viewed the issues in terms of EMTALA's requirement for "stabilization" after admission and prior to a transfer. Clearly, Baby K is not a "comes to" the hospital or refusal to admit case. Moreover, there is a dissent which points out: "Clearly, there is no suggestion of patient "dumping" in this case." This court finds that Baby K has little or no application to this case.

Plaintiff also cites St. Anthony Hosp. v. U.S. Dept. of Health and Human Services, 309 F.3d 680 (10th Cir. 2002). St. Anthony was an appeal of the imposition of a civil monetary penalty for a violation of EMTALA. The Circuit addressed the procedural requirement for and the adequacy of the administrative hearing. The court acknowledged that, as the terms are defined in the statute, there can

---

visits that occurred during that calendar year, it provides at least one-third of all of its outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

be no transfer if the receiving facility does not accept the individual to provide medical treatment. The issue raised by Salina Regional is that COMCARE is not a hospital, not that Salina Regional did not accept the transfer. Again, plaintiff's reliance on St. Anthony is misplaced.

c.  Is there a constitutional violation?

Plaintiff argues that to narrowly interpret § 1395dd(g)'s definition of "transfer" would violate the constitutional right to travel as protected by the Due Process Clauses of the Fifth and Fourteenth Amendment. Plaintiff alleges that individuals could be "unnecessarily sacrificing their right to live-saving medical care" if they travel into rural areas and treatment may be rejected because they are not at a "hospital" as defined under EMTALA.

Plaintiff provides no case support for this argument and the court can find none. If nothing else, the argument does not fit the facts. No interstate travel occurred in this case.

IV.  Supplemental Jurisdiction

The court has discretion to decline to exercise supplemental jurisdiction over state law claims when the court has dismissed the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998). Because the court will dismiss the EMTALA claim, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state claims against Dr. Kauer and Salina Regional.

V.  Conclusion

Every EMTALA case the court has read, including cases not cited,

involve sad, tragic and often seemingly medically-questionable scenarios. However, this court is one of limited jurisdiction: only EMTALA provides subject matter jurisdiction. The court is satisfied that plaintiff cannot establish a plausible EMTALA case and accordingly, for the reasons stated, plaintiff's EMTALA claim is dismissed and the court declines to exercise supplemental jurisdiction over the remaining state claims.

Salina Regional's motion to dismiss (Doc. 6) is granted. A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). The response to any motion for reconsideration shall not exceed five pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __8th__ day of May 2012, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE